## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE; and MICHIGAN OIL AND GAS ASSOCIATION, <br>           *Plaintiffs*, <br><br> v. <br><br> LEE ZELDIN, in his official capacity as the Administrator of the United States Environmental Protection Agency; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and UNITED STATES OF AMERICA, <br><br>           *Defendants*. | Case No. 1:25-cv-67 |

## BRIEF IN SUPPORT OF MOTION OF ENVIRONMENTAL AND PUBLIC HEALTH ORGANIZATIONS TO INTERVENE IN SUPPORT OF DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 24, Center for Biological Diversity, Earthworks, Environmental Defense Fund, Environmental Law & Policy Center ("ELPC"), and Sierra Club (collectively, "Movants") hereby move to intervene in support of Defendants U.S. Environmental Protection Agency ("EPA"), Lee Zeldin, and the United States in the above-captioned matter. Counsel

1

for the parties have been contacted for their position on this motion.  Plaintiffs

oppose this motion; Defendants take no position on it.[1]

## INTRODUCTION

Section 136 of the Clean Air Act ("the Act"), among other things, directs

EPA to assess a charge ("the Charge") on polluting facilities in the oil and gas

sector reporting 25,000 metric tons of carbon dioxide equivalent or more to the

Greenhouse Gas Reporting Program and whose methane emissions exceed

specified waste thresholds. 42 U.S.C. § 7436(c). Section 136 details the process

EPA must follow in implementing the Charge, including how to calculate it and

determine when operators are eligible for exemptions. *Id.* On November 18, 2024,

EPA finalized a rule establishing procedures for facilitating compliance with this

provision. *Waste Emissions Charge for Petroleum and Natural Gas Systems:*

*Procedures for Facilitating Compliance, Including Netting and Exemptions*, 89

Fed. Reg. 91,094 (November 18, 2024) ("Rule").

EPA estimates that the Charge, once implemented, will reduce methane

---

[1] With this motion, Movants have submitted a proposed Answer to the Complaint, see Fed. R. Civ. P. 24(c), and are also lodging a motion to dismiss arguing that Plaintiffs' claims are subject to the exclusive jurisdiction of the U.S. Court of Appeals for the District of Columbia Circuit.

emissions by 1.2 million metric tons between 2024 and 2035,[2] resulting in $2.4 billion in climate benefits and $1.9 billion in net economic benefits over that time period. RIA Table 7-2. EPA also projects that the Charge will reduce Volatile Organic Compound ("VOC") emissions by 170 thousand metric tons and Hazardous Air Pollutant ("HAP") emissions by 6 thousand metric tons between 2024 and 2035. RIA Table 7-1.

 Movants seek to intervene in this proceeding to protect their substantial interests that may be impaired by the disposition of this case. Movants' members live, work, and recreate near oil and gas sites emitting VOCs and HAPs that cause them myriad health issues, including asthma and reduced respiratory function. Additionally, Movants' members suffer from the impacts of climate change caused by oil and gas sector methane emissions. For over a decade, Movants have participated in administrative proceedings under the Clean Air Act to reduce pollution from oil and gas facilities as well as in subsequent litigation concerning those actions. Movants participated in the regulatory proceedings to implement Section 136, are actively participating in other litigation involving Section 136, and have an ongoing interest in the pollution reductions Section 136 will achieve. Additionally, as reflected in their Motion to Dismiss filed concurrently with this

---

[2] EPA, Regulatory Impact Analysis (Nov. 2024) ("RIA") at Table 7-1; 89 Fed. Reg. at 91,155.

Motion to Intervene, Movants have an interest in ensuring that Section 136 is not subjected to piecemeal and duplicative litigation outside of the U.S. Court of Appeals for the D.C. Circuit, the sole forum for judicial review of nationally applicable rules under the Clean Air Act. 42 U.S.C. § 7607(b)(1).

No other party, including EPA, adequately represents Movants' interests. Movants advocated for approaches that EPA did not adopt in the Rule, and while EPA must consider impacts to various stakeholders, including the regulated industry, Movants seek to advance pollution reductions and protect the health and welfare of their members. The Court should grant this timely motion for intervention.

## BACKGROUND

### I. Methane and associated air pollution from oil and gas operations harm public health and the environment.

Methane is a potent greenhouse gas that is responsible for about one-third of all human-caused global warming and is thus a major driver of climate change. 89 Fed. Reg. at 91,098. The oil and gas sector is the largest industrial source of methane emissions in the United States. *Id.* The United States is already facing the devastating impacts of climate change. Among its many consequences, climate change causes the air and ocean to become warmer, reduces snowpack, intensifies severe weather events like hurricanes, and raises sea levels. *Id.* at 91,098-99. These events have taken and will continue to take a significant toll on public health, the

economy, property and infrastructure, agricultural land, and natural resources. *Id*.[3]

VOC emissions are released alongside methane at oil and gas facilities. RIA at 5-14. VOCs contribute to the formation of ground-level ozone, 89 Fed. Reg. at 91,156, which can cause adverse health effects such as premature respiratory mortality, asthma symptoms and exacerbations, allergic rhinitis symptoms, and respiratory emergency department visits. RIA at 6-22, A-7.[4] Furthermore, oil and gas operations emit large quantities of HAPs, also known as air toxics, including benzene and formaldehyde. 89 Fed. Reg. at 91,156; *see* 42 U.S.C. § 7412(b)(1). Benzene is a human carcinogen and is also associated with anemia, leukopenia, arrested development of blood cells, thrombocytopenia, and respiratory impacts. RIA at 6-29. Formaldehyde is also a carcinogen and can cause respiratory tract irritation, chronic bronchitis, and asthma. *Id.* Measures that reduce methane emissions from the oil and gas sector also reduce co-emitted VOCs and HAPs and their corresponding risks. 89 Fed. Reg. at 91,156.

## II. Passage of the Inflation Reduction Act and finalization of the Rule.

In August 2022, Congress passed the Inflation Reduction Act ("IRA").[5] Among many other things, the IRA established a new provision of the Clean Air

---

[3] *See also* DelBuono Decl.

[4] *See also* DelBuono Decl.

[5] Inflation Reduction Act of 2022, Pub. L. No. 117-169 (2022).

Act—Section 136—titled the Methane Emissions Reduction Program ("MERP").

42 U.S.C. § 7436. In passing Section 136, Congress acknowledged the need to

significantly reduce methane and other emissions from this sector to address

climate change and protect public health. *See* 89 Fed. Reg. at 91,095-96. Congress

established the Charge, 42 U.S.C. § 7436(c), as part of Section 136 to incentivize

our nation's highest-emitting and least-efficient oil and gas operations to reduce

their methane emissions. 89 Fed. Reg. at 91,096. The Charge requires affected

operators to pay a specified price for each metric ton of methane they emit above

segment-specific thresholds that align with industry commitments. 42 U.S.C.

§ 7436(f). Section 136 directs EPA to collect the Charge annually starting with

2024 emissions, *id.* § 7436(e), to allow for netting across commonly-owned

sources when calculating Charge liability, *id.* § 7436(f)(4), and to allow for

exemptions under certain conditions, *id.* § 7436(f)(5)-(7).

On November 18, 2024, EPA finalized the Rule implementing the Charge.

Among other things, the Rule explains how operators are to calculate and submit

payment. 89 Fed. Reg. at 91,094-98. In January 2025, numerous parties, including

Plaintiffs, filed petitions for review of the Rule in the D.C. Circuit pursuant to the

judicial review requirements of section 307(b) of the Clean Air Act.

6

### III. Movants have engaged in prior administrative and court proceedings concerning EPA's oil and gas sector regulations.

Movants have strong organizational interests in abating climate and air pollution, grounded in their members' interests in reducing these harmful emissions. *See* Proville Decl.; Collentine Decl.; Maher Decl.; Pagel Decl.; Michaels Decl. As part of their work, Movants have engaged in EPA's many prior rulemaking proceedings on methane and VOC emissions from the oil and gas sector under the Clean Air Act, submitting extensive technical and legal comments, advocating before agency staff, and testifying at public hearings.[6] Movants also advocated for the adoption of Section 136 through the legislative process and participated in the regulatory proceeding that resulted in the challenged Rule.[7] In

---

[6] *See, e.g.,* Comments of Environmental and Public Health Organizations in response to EPA's Proposed Revisions to New Source Performance Standards for the Oil and Gas Sector (Nov. 30, `2011), EPA-HQ-OAR-2010-0505-4189, EPA-HQ-OAR-2010-0505-4240, & EPA-HQ-OAR-2010-0505-4275; Comments of Environmental and Public Health Organizations in response to EPA's Proposed Emission Standards for New and Modified Oil and Natural Gas Sources (Dec. 4, 2015), EPA-HQ-OAR-2010-0505-6934, EPA-HQ-OAR-2010-0505-6984, & EPA-HQ-OAR-2010-0505-6994; Comments of Environmental and Public Health Organizations on Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review (Jan. 31, 2022), EPA-HQ-OAR-2021-0317-0844; Supplemental Comments of Environmental and Public Health Organizations on Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review (Feb. 13, 2023), EPA-HQ-OAR-2021-0317-2433.

[7] *See* Comments of Environmental and Public Health Organizations (March 28, 2024), EPA-HQ-OAR-2023-0434-0327.

addition, Movants have regularly engaged in litigation over many years to protect and defend the pollution reductions oil and gas standards will deliver and to oppose attempts to weaken those standards.[8] Several of the Movants are also currently engaged in a D.C. Circuit review of an action also related to Section 136[9] and have moved to intervene in D.C. Circuit litigation challenges to the Rule from Plaintiffs and other parties.[10] And courts have previously granted Movants' motions to intervene defensively in legal challenges to EPA methane regulations for the oil and gas source category.[11] Most Movants have also participated in previous Clean

---

[8] *See. e.g.,* Joint Mot. of Envtl. Pet'rs to Intervene on Behalf of Resps., Doc. No. 1405110, *Am. Petroleum Inst. v. EPA*, No. 12-1405, et al. (D.C. Cir. Nov. 14, 2012); Mot. to Intervene in Support of Resp*., Doc. No. 1630507, *State of Texas v. EPA,* No. 16-1242, et al. (D.C. Cir. Aug. 15, 2016); Pet. for Review, Doc. No. 1678132, *Clean Air Council v. Pruitt*, No. 17-1145 (D.C. Cir. June 5, 2017); Pet. for Review, Doc. No. 1861357, *EDF v. Wheeler*, No. 20-1359 (D.C. Cir. Sept. 14, 2020); Mot. of Envtl. and Pub. Health Orgs. to Intervene in Support of Resps., Doc. No. 2044639, *State of Texas v. EPA*, No. 24-1054 and et al. (D.C. Cir. Mar. 12, 2024).

[9] Mot. of Envtl. Orgs. to Intervene in Support of Resps., Doc. No. 2069578, *Indep. Petroleum Ass'n of Am. v. EPA*, Nos. 24-1242, et al. (D.C. Cir. Aug. 12, 2024).

[10] Mot. of Envtl. Orgs. to Intervene in Support of Resps., Doc. No. 2098012, *Indep. Petroleum Ass'n of Am. v. EPA*, Nos. 25-1021, et al. (D.C. Cir. Jan. 31, 2025).

[11] *See, e.g.*, Order, Doc. No. 2072780, *Indep. Petroleum Ass'n of Am. v. EPA*, No. 24-1242 and consolidated cases (D.C. Cir. Sept. 3, 2024); Order, Doc. No. 2050337, *Texas v. EPA*, No. 24-1054 and consolidated cases (D.C. Cir. Apr. 19, 2024); Order, Doc. No. 1651602, *North Dakota v. EPA*, No. 16-1242 and consolidated cases (D.C. Cir. Dec. 19, 2016); Order, Doc. No. 1548697, *Indep. Petroleum Ass'n of Am. v. EPA*, No. 15-1040 (D.C. Cir. Apr. 22, 2015); Order, Doc. No. 1506440, *Am. Petroleum Inst. v. EPA*, No. 13-1289 and consolidated cases (D.C. Cir. Aug. 6, 2014); Order, Doc. No. 1428767, *Am. Petroleum Inst. v. EPA*, No. 12-1405 and consolidated cases (D.C. Cir. Apr. 3, 2013).

Air Act litigation in the Sixth Circuit, both as petitioners[12] and respondent-intervenors,[13] and/or in Sixth Circuit cases arising under other environmentally oriented statutes.[14]

Movants have extensive expertise on how methane and other pollution affect the climate and public health and how to monitor and mitigate emissions from the oil and gas sector. For example, Environmental Defense Fund scientists have published numerous scientific papers on oil and gas methane emissions.[15] Earthworks has studied and documented health effects associated with oil and gas

---

[12] *See, e.g.*, Pet. for Review, Doc. No. 1-3, *Sierra Club v. EPA*, No. 23-3581 (6th Cir. July 17, 2023) and Pet. for Review, Doc. No. 1-2, *Sierra Club v. EPA*, No. 23-3583 (6th Cir. July 17, 2023) (Sierra Club challenges to EPA actions arising under the Clean Air Act's National Ambient Air Quality Standards program).

[13] *See* Order, Doc. No. 19-1, *State of Ohio v. EPA*, No. 11-3988 (6th Cir. Nov. 9, 2011) (granting Environmental Defense Fund's and Sierra Club's motion to intervene in defense of EPA's action disapproving of Ohio's plan for controlling interstate air pollution).

[14] *See, e.g.*, Order, Doc. No. 23-2, *Murray Energy Corporation v. EPA*, No. 15-3751 and consolidated cases (6th Cir. Sept. 16, 2015) (granting motion by Center for Biological Diversity, Sierra Club, and other environmental groups to intervene in defense of EPA's Clean Water Act regulations); Order, Doc. No. 73, *West Virginia v. NHTSA*, Nos. 24-3560, *et al.* (6th Cir. Dec. 10, 2024) (granting defensive intervention to Environmental Defense Fund, Environmental Law & Policy Center, and Sierra Club in challenges to NHTSA's vehicle fuel efficiency standards and finding that motion "shows an indisputable interest in the proceedings and demonstrates that their interests might be impaired or inadequately represented").

[15] *See* Environmental Defense Fund, Methane Research Bibliography (cited version last updated October 2023), available at: https://library.edf.org/AssetLink/5u438u4d822d25r2h78nku0e72h6x86f.pdf.

air pollution in areas such as Karnes County, Texas.[16] The Center for Biological

Diversity has a longstanding campaign advocating for the rapid abatement of

greenhouse gases, including methane emissions.[17] And for well over a decade,

Sierra Club has operated its Beyond Dirty Fuels campaign, which, among other

things, works in all oil- and gas-producing regions of the United States to educate

members affected by oil and gas pollution and to organize them in support of

policies that will mitigate this problem.[18]

## ARGUMENT

## I.  Movants satisfy the requirements for intervention as of right.

Under Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to

intervention as of right whenever (1) its motion is "timely;" (2) the movant claims

an "interest relating to the . . .  subject of the action;" (3) disposition of the action

"may as a practical matter impair or impede the movant's ability to protect its

interest;" and (4) the existing parties may not "adequately represent" the movant's

interest. Fed. R. Civ. P. 24(a)(2). This standard is lenient, and "broadly construed

---

[16] *See* Earthworks, *Earthworks Optical Gas Imaging Brings Dangers of VOCs and Methane to Light* (Oct. 22, 2019), https://earthworks.org/wp-content/uploads/2021/09/Earthworks-PA-Methane-Problem-explainer.pdf.
[17] *See* Ctr. for Biological Diversity, *Out-Polluting Progress*, https://www.biologicaldiversity.org/programs/climate_law_institute/pdfs/Out-Polluting-Progress-Report-2023.pdf (last visited Feb. 5, 2025).
[18] *See* Sierra Club, *Dirty Fuels Story Map*, https://www.sierraclub.org/dirty-fuels/dirty-fuels-story-map (last visited Feb. 5, 2025).

in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991); *Hatton v. Cty. Bd. of Educ. of Maury Cty., Tenn.*, 422 F.2d 457, 461 (6th Cir. 1970).

As explained below, Movants timely filed this motion shortly after the case was initiated; Movants have an interest in Section 136's implementation and the Rule's pollution reductions; Plaintiffs' challenges threaten those pollution reductions; and no other party adequately represents Movants' interests

**A. Movants' motion to intervene is timely.**

A motion to intervene under Rule 24(a) must be timely. The determination of timeliness is within the sound discretion of the trial court and should be evaluated in the context of all relevant circumstances, including the point to which the suit has progressed and any prejudice to the original parties. *United States v. City of Detroit*, 712 F.3d 925, 930 (6th Cir. 2013). Movants' motion is timely, coming within just a few weeks of the case's initiation. The Complaint was filed on January 17, 2025, the case is still in its initial stages, and no prejudice will result to the original parties.

**B. Movants have significant interests in effective implementation of the statute, its implementing regulations, and the protections they will provide.**

Movant organizations have missions to protect public health and the environment, and Movants' members experience climate and health harms that will

11

be mitigated by Section 136 and its implementing regulations, including the Rule. Movants therefore have an "interest relating to the . . . subject of the action." *See* Fed. R. Civ. P. 24(a)(2).

The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("This court has acknowledged that 'interest' is to be construed liberally."). Movant intervenors must show "a direct, significant legally protectable interest" in the subject matter of the litigation. *United States v. Detroit Intern. Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993). The Sixth Circuit has previously granted public interest groups intervention under similar circumstances. *See, e.g.*, *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022) (finding a sufficient interest based on member affidavits describing the protections they would enjoy under a challenged zoning ordinance). It has also found that public interest groups have a substantial interest based on their participation in the adoption and implementation of the legislation at issue. *See Michigan State AFL-CIO*, 103 F.3d at 1247; *see also Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (noting that "public interest groups . . . whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted."). As described below,

Movants and their members have a significant interest in pollution reductions achieved by the implementation of Section 136 under the Rule.

Movants do not need to demonstrate standing to intervene as defendants.[19] Nevertheless, Movants have standing to intervene. Standing to intervene is established "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015). An organization may defend an agency action on its members' behalf "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ne. Ohio Coal. for Homeless and Serv. Emp. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181

---

[19] Because Movants seek to intervene in support of Defendants and are thus not affirmatively invoking the Court's jurisdiction, Movants do not need to establish standing. *See Virginia House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1951 (2019) (explaining that "it was not … incumbent on [a party] to demonstrate its standing" when it participated "as an intervenor in support of the … Defendants," or "as an appellee" on appeal "[b]ecause neither role entailed invoking a court's jurisdiction"); *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) ("[A] party seeking to intervene need not possess the standing necessary to initiate a lawsuit.").

(2000)). As described in more detail below, Movants' members would be injured if
the Rule is vacated or Section 136 invalidated and accordingly would have
standing to defend the Rule and Section 136 in their own right.

Movants' members live, work, and recreate near oil and gas development
emitting methane, VOCs, and HAPs and have oil and gas sites and equipment
directly on their property or within a very short distance.[20] This pollution
contributes to myriad health problems for Movants' members and/or their families
and communities, including asthma, allergies, respiratory illness, heart failure,
rashes, anemia, headaches, and nosebleeds,[21] and one has even have tested positive
for excessively high amounts of benzene, a toxin frequently emitted from oil and
gas facilities.[22] As a result of poor air quality and climate impacts caused in part by
oil and gas pollution, Movants' members have had to limit or altogether cease the
activities they typically enjoy, including going outside, running, snowshoeing,
skiing, and hiking on trails and in National Parks.[23] The livelihoods and cultures
upon which Movants' members depend have also been threatened.[24]

Movants' members live in counties with oil and gas facilities that will be

---

[20] Bower-Bjornson Decl.; Richardson Decl.; Nichols Decl.; Leach Decl.; Schreiber
Decl.
[21] *See generally* Decls.
[22] Bower-Bjornson Decl.
[23] *See* Richardson Decl.; Bower-Bjornson Decl.; Nichols Decl.
[24] *See* Schreiber Decl.

subject to the Charge and therefore would benefit from its complete implementation. For example, analysis from Environmental Defense Fund estimates that 40,000 of its members live in counties with emissions that would be subject to the Charge. Proville Decl. ¶ 21. Sierra Club and Environmental Defense Fund member Todd Richardson lives near the border of Ector and Midland counties in Texas, Richardson Decl. ¶ 2, which will have "high" and "very high" emissions subject to the Charge, respectively. RIA 9-17. Environmental Defense Fund member Francis Don Schreiber resides in Rio Arriba County, New Mexico, Schreiber Decl. ¶ 1, with "very high" emissions subject to the Charge. RIA 9-17. Earthworks member Lois Bower-Bjornson lives in Washington County, Pennsylvania, Bower-Bjornson Decl. ¶ 6, which has at least some oil and gas facilities that will be subject to the Charge and is surrounded by four other counties with either "medium" or "high" emissions subject to the Charge. RIA 9-17.  And ELPC member Paula Leach owns a lake house in Antrim County, Michigan, Leach Decl. ¶ 1, which also has oil and gas facilities that will be subject to the Charge. RIA 9-17. EPA analysis demonstrates that the Charge will incentivize operators to reduce their emissions since doing so is more cost-effective than paying the Charge.[25]

---

[25] RIA at 2-9.

Movant organizations also have substantial interests in the subject matter of the action in light of the significant efforts they have undertaken in pursuing frequent legal and administrative advocacy to reduce methane and other emissions from the oil and gas sector. *See supra* pp. 7-10. Movants have a further interest in ensuring Section 136 is properly implemented, having invested significant resources in advocating for its adoption through the legislative process and in its implementation through administrative proceedings. *See Michigan State AFL-CIO*, 103 F.3d at 1247. These interests are sufficient to support intervention under Rule 24(a)(2).

### C. Movants' interests would be threatened by a ruling that eliminates the Rule's and Section 136's climate and air quality protections.

An order invalidating the Rule or Section 136 would harm Movants' members' health and welfare. As discussed above, Movants' members are harmed by oil and gas methane, VOC, and HAP pollution and would directly benefit from the emission reductions that result from the Charge. *See supra* pp. 12-16. Should implementation of Section 136 be barred or diminished, Movants' members will suffer injury. Moreover, because this litigation may concern questions of law under the Clean Air Act, an adverse judgment may impair Movants' ability to fully pursue their interests in future litigation. Thus, the disposition of this case "may as a practical matter impair or impede" Movants' ability to protect their substantial

interests in securing emissions reductions from the oil and gas sector. *See* Fed. R.

Civ. P. 24(a)(2).

### D. Movants' interests may not be adequately represented by EPA.

Finally, because Movants' interests in this case are distinct from EPA's, the

agency may not "adequately represent" Movants' interests. *See* Fed. R. Civ. P.

24(a)(2). Movant intervenors' burden here "is minimal because it is sufficient that

the movant prove that representation *may be* inadequate." *Michigan State AFL-*

*CIO*, 103 F.3d at 1247 (emphasis added).

The Sixth Circuit has previously held that governmental entities do not

adequately represent interests of more narrowly focused intervenors. *See, e.g.*,

*Wineries of the Old Mission Peninsula Ass'n*, 41 F.4th at 775 (contrasting

obligation of township to represent all its residents to membership interest groups

who are concerned with a narrower set of impacts). Whereas Defendants'

"obligation is to represent the interests of the American people," *Fund for Animals,*

*Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)—including the oil and gas

industry—Movants represent the more specific interests of their members in

avoiding dangerous air pollution from oil and gas production.

Movants thus readily satisfy the "minimal" standard of establishing

inadequate representation. *See Michigan State AFL-CIO*, 103 F.3d at 1247. While

EPA must balance multiple interests and perspectives, Movants' goals are singular:

to protect their members by ensuring the soonest and greatest possible emission reductions from the oil and gas sector. Indeed, in administrative proceedings for the Rule, Movants advocated that EPA take different approaches to implement Section 136 of the Act than were ultimately adopted in the Rule.[26] As a result, Movants have sufficiently distinct interests to support intervention. Indeed, the new administration has signaled its intent to pause all litigation and/or substantially diverge from EPA priorities under the prior administration.[27]

In light of Movants' distinct interests, there is a "potential for inadequate representation here," which is all that is required. *See Wineries of the Old Mission Peninsula*, 41 F.4th at 777; *Ne. Ohio Coal. For Homeless* 467 F.3d 999 at 1008 ("[I]t is sufficient to prove that representation *may* be inadequate." (emphasis in original)).

## II. Movants satisfy the standard for permissive intervention.

Rule 24 also grants the district courts discretion to allow "permissive" intervention whenever an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Movants would easily meet these requirements if they were applied here. Movants

---

[26] *Supra* note 6.
[27] *See* Exec. Order No. 14154, "Unleashing American Energy," § 3(c) (Jan. 20, 2025).

intend to offer defensive arguments, all of which will necessarily share questions of law and fact with the underlying challenge and with EPA's defense of the Rule and Section 136—including the argument that Plaintiffs' claims are subject to exclusive D.C. Circuit litigation. EPA's, Plaintiffs', and Movants' arguments will all likely be grounded in Section 136 of the Act under which EPA acted and in the administrative record for the Rule. Movants have a long history of advocating for policies to reduce methane and other pollution from the oil and gas sector and respectfully submit that the Court will benefit from their participation here.

## CONCLUSION

For the foregoing reasons, Movants should be granted leave to intervene as defendants.

Respectfully submitted,

/s/Wendy Bloom
Wendy Bloom
Environmental Law & Policy Center
35 East Wacker Drive
Suite 1600
Chicago, IL 6061
(312) 673-6500
WBloom@elpc.org

*Counsel for Environmental Law & Policy Center*

/s/ Sean H. Donahue
Sean H. Donahue
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com

*Counsel for Environmental Defense Fund and Center for Biological Diversity*

<u>/s/ Andres Restrepo</u>
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, DC 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

*Counsel for Sierra Club*


<u>/s/ Ann Brewster Weeks</u>
Ann Brewster Weeks
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234
aweeks@catf.us

*Counsel for Earthworks*

February 7, 2025

Grace Smith
Edwin LaMair
Rosalie Winn
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7212


Margaret A. Coulter
Jason C. Rylander
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
(202) 961-4820

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that according to the word-count function of Microsoft Word, the foregoing BRIEF IN SUPPORT OF MOTION OF ENVIRONMENTAL AND PUBLIC HEALTH ORGANIZATIONS TO INTERVENE IN SUPPORT OF DEFENDANTS contains 4,270 words.

February 7, 2027                    */s/ Sean H. Donahue*
                                    Sean H. Donahue